UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

JOHN DOE,

      Plaintiff,

v.

ROMULUS COMMUNITY SCHOOLS;
BEN EDMONDSON, in his individual and official capacity,

      Defendants.

Case No. 2:25-cv-11295
Hon.

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCH, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com
gina@delaportelynch.com

## **COMPLAINT**

NOW COMES Plaintiff JOHN DOE (hereinafter "JOHN DOE" or "Plaintiff"), by and through his attorneys, Delaporte Lynch, PLLC, and files his Complaint for Violations of the Persons with Disabilities Civil Rights Act (PWDCRA); Violations of Section 504 of the Rehabilitation Act of 1973; Violations of the Michigan Whistleblower Protection Act; Violations of the Michigan Elliott-Larsen Civil Rights Act; Breach of Employment Contract; and Intentional Infliction of Emotional Distress.

1

## VENUE AND JURISDICTION

1. During all relevant times, Plaintiff was an Administrator at Romulus Community Schools.

2. Defendant Romulus Community Schools District (hereinafter, "the District" or "RCS"), is a Michigan governmental entity located entirely within Romulus, Michigan, in this Honorable Court's territorial jurisdiction.

3. During all relevant times, Dr. Benjamin P. Edmondson was an individual residing within Wayne County, Michigan, and the Superintendent of the District.

4. This Honorable Court retains subject matter jurisdiction over Plaintiff's federal question claims pursuant to 28 U.S.C. §1331.

5. This Honorable Court retains supplemental jurisdiction over Plaintiff's state law claims arising under statutory and common law pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper pursuant to 28 U.S.C. §1391 because all of the acts complained herein occurred within the boundaries of this Honorable Court's territorial jurisdiction.

7. The amount in controversy exceeds $25,000.00.

8. Thus, legal jurisdiction and venue is proper in this Honorable Court.[1]

## FACTS

9. JOHN DOE is an experienced special education school administrator with a career spanning over two decades in administrative and teaching roles.

---

[1] Plaintiff asserts that the contractual limitations period and Arbitration language contained in his Employment Contract may not, as a matter of law, apply to certain statutory and contractual claims, and thus, AAA may not be the proper venue and may not have jurisdiction. Concurrent with the filing of this Complaint in the U.S. District Court for the Eastern District of Michigan, Plaintiff files a Demand for Arbitration. Plaintiff does not waive his right to contest this matter in either forum by filing this Complaint.

10. Early in his career, JOHN DOE held roles as a Special Education Teacher, Assistant Principal, and Principal in a prior Michigan School District, worked for the University of Michigan College of Education, and obtained a Doctorate in Educational Leadership.

11. JOHN DOE has also provided consulting services to other Michigan school districts to aide with special education curriculum and compliance.

12. In each of his employment endeavors, including with RCS, JOHN DOE has excelled professionally, conducted himself with the highest ethical regard, and worked towards and for the benefit of the students he has either taught or led.

13. When JOHN DOE was first hired at RCS, it was a "disaster."  RCS has faced seven Superintendents in eight years, and there were extreme compliance issues and practitioner dysfunction within the Special Education Department.

14. In February 2023, in an unprecedented and controversial move, RCS re-hired Defendant Edmondson, after the Board of Education terminated his employment in 2021.

15. Since returning to the District, Defendant Edmondson's tenure has been marred by repeated instances of abuse, harassment, the creation of a hostile work environment, violations of law, and other grossly inappropriate and humiliating comments directed at District employees, including JOHN DOE.

16. During his first sit down meeting with JOHN DOE, Defendant Edmondson told JOHN DOE that the Board hates him (Edmondson), and that the Board "fired his Black ass," making JOHN DOE uncomfortable and concerned regarding this new leadership.

17. Defendant Edmondson directed countless tirades at JOHN DOE, targeting him due to his medical conditions, disability status, race, sex, and gender.

3

18. Defendant Edmondson's harassment intensified after JOHN DOE's life-threatening medical emergency in December 2023.

19. In December 2023, JOHN DOE developed a life-threatening condition involving a particularly embarrassing part of JOHN DOE's body.

20. JOHN DOE received his diagnosis the day before winter break in 2023 after months of unexplained, severe pain in the region.

21. JOHN DOE underwent surgery the next day.

22. Two weeks later, JOHN DOE's condition worsened, leading to further major surgery to remove the life-threatening condition.

23. JOHN DOE was subsequently off work for a nearly 4-month period for recovery.

24. Since undergoing surgery in December 2023, JOHN DOE has experienced multiple painful and embarrassing complications requiring ongoing medical procedures.

25. Due to the severity of his conditions, JOHN DOE required frequent and regular medical care, changing of gauze and dressings regularly to ensure recovery and prevent further complications.

26. JOHN DOE's condition also caused him to have a physical disability, as it substantially limited his ability to perform major life activities, such as walking, standing for prolonged periods of time, attending to personal hygiene, and required him to receive and/or perform regular wound care and therapy.

27. During his recovery, the District permitted JOHN DOE to work from home for nearly three months.

28. JOHN DOE's work from home accommodation allowed him to perform his employment duties with the support of home nursing, Physical Therapy, and Occupational Therapy home care.

29. During the 2023-24 school year, despite experiencing personal, emotional, and physical challenges due to his disability and medical condition, JOHN DOE was evaluated as "effective" or "highly effective" in all domains of his evaluation.

30. During JOHN DOE's time at RCS, Defendant Edmondson has made crude and highly derogatroy comments regarding JOHN DOE's medical condition in front of colleagues, including comments too inappropriate to quote directly, addressing JOHN DOE's masculinity, sexual function, and JOHN DOE's perceived inability to engage in sexual activity due to his medical condition.

31. Additionally, on several occasions, Defendant Edmondson directed JOHN DOE to take actions that would violate Section 504 of the Rehabilitation Act of 1973, the Individuals with Disabilities Education Act (IDEA), and violate a student's right to a Free Appropriate Public Education (FAPE).

32. Defendant Edmondson sought to remove a student with autism from school due to her alleged inability to follow directions (a behavior directly related to her disability), because she was allegedly interfering with other students' education.

33. Defendant Edmondson instructed JOHN DOE to unilaterally alter the placement of students with disabilities without input from the appropriate Special Education team members.

34. Defendant Edmondson instructed JOHN DOE repeatedly to terminate a special education employee for discriminatory reasons and to intimidate JOHN DOE, making a statement to the effect of, "it's either going to be you or her."

35. Defendant Edmondson also directed JOHN DOE to separate a special needs student from his assigned placement, among other violations.

36. Defendant Edmondson repeatedly made offensive and disparaging comments about women in the presence of JOHN DOE and colleagues.  For example, Defendant shared a story about himself and other men allegedly having sexual relations with a married woman while her husband videotaped.  Defendant also stated that he believed men and women could only be 'friends' after having sex.

37. Plaintiff met with Defendant Edmondson on October 22, 2024, to go over various issues related to Defendant Edmondson's hostile work environment, acts of sex discrimination against Plaintiff and others, and violation of the rights of students with disabilities.

38. In addition to the above, JOHN DOE sought to highlight the toxic and hostile work atmosphere created by Defendant Edmondson when he made comments verbally and/or in writing about an employee having her "titties" out for "Titty Tuesday" in the Administration Office; needing fresh "p****" (a pejorative for the female sexual organ), before attending a student discipline meeting; making comments disparaging white employees; instructing JOHN DOE to address certain staff members using discriminatory language; and referring to three "Black m*****-f*****s" in the high school.

39. Plaintiff discussed morale and retention within the special education department at RCS, dysfunction at the top in the RCS hierarchy, how Defendant Edmondson uses intimidation tactics as his leadership style.

40. Once the conversation started becoming uncomfortable, Defendant Edmondson made an excuse to leave the October 22, 2024, meeting early (a meeting that Edmondson scheduled), citing a need to pick up his dog.  Nevertheless, Plaintiff made Defendant Edmondson aware of the substance of his complaints/concerns.

*Request for a Reasonable Accommodation*

41. On November 6, 2024, JOHN DOE underwent another surgery related to his condition/disability.

42. JOHN DOE's physicians estimated that it would take him approximately Two (2) to Four (4) weeks to heal from the November 6 surgery.

43. Plaintiff used paid time off (PTO) to cover his absence, which was FMLA and ADA qualifying.

44. Following his surgery, JOHN DOE sought a reasonable accommodation from Defendant Edmondson, seeking a work-from-home arrangement equivalent to the accommodation he received the year prior.

45. When JOHN DOE reached out to Defendant Edmondson about a work from home accommodation, Defendant Edmondson responded to the effect of, "I feel I've done enough."

46. On or about December 19, 2024, Defendant Edmondson instead informed JOHN DOE his only options were to either work on a 2.5 FTE status schedule from home (causing JOHN DOE to lose 50% of his income), or take an unpaid leave of absence.

47. Defendant Edmondson further indicated the District would need to hire an "Interim" Administrator while JOHN DOE was on leave.

48. Based upon Defendant Edmondson's comments, tone, and other factors, it was clear to JOHN DOE that Edmondson's refusal to grant a reasonable accommodation, similar to the year before, was a direct result of JOHN DOE's advocacy for special needs students, refusal to violate the law or discriminate against employees and students, Edmondson's discriminatory views, and his abuse of the disabled.

49. Defendant Edmondson imposed an arbitrary deadline for JOHN DOE to accept or reject Defendant Edmondson's proposal.

50. Prior to expiration of the deadline, JOHN DOE requested clarification from Defendant Edmondson regarding the rationale behind offering a 2.5 FTE schedule, as he was confused why Defendant Edmondson presented such a restrictive alternative after JOHN DOE had successfully worked remotely without issue.

51. Defendant Edmondson did not respond to JOHN DOE's request for information.

52. On January 9, 2025, JOHN DOE, through counsel, formally requested that RCS and Defendant Edmondson engage in the interactive process as required by the ADA.

53. During the interactive process meeting, JOHN DOE was informed for the first time that the previous work-from-home accommodation was no longer viable, as JOHN DOE was allegedly unable to perform all essential job functions from home.

54. In support of its contentions, the District relied on a single comment from Defendant Edmondson contained in an alleged evaluation document, which was used as a reflection exercise prior to JOHN DOE's final 2023-24 evaluation, was written by Defendant Edmondson, and not adopted by JOHN DOE.

55. The District also relied on the alleged job posting to claim that JOHN DOE could not meet the essential functions of his job.

56. The District did not disclose these documents to JOHN DOE prior to, or during, the interactive process meeting.

57. The alleged evaluation document was not issued as part of JOHN DOE's final performance evaluation, was never affirmed or agreed to by JOHN DOE, and was not included in JOHN DOE's personnel file.[2]

58. Furthermore, all essential job responsibilities could be performed by JOHN DOE with a reasonable accommodation that addresses his current physical limitations and allows him to engage with students and staff to effectively perform his job duties.

59. To date, the District has not identified any specific job duties listed in the job posting that could not be reasonably accommodated by JOHN DOE's remote presence.

60. On February 5, 2025, Defendants informed JOHN DOE of their refusal to consider a telepresence robot, declined to provide JOHN DOE with a reasonable accommodation, and reiterated that JOHN DOE's only options were to accept the 2.5 FTE schedule or continue on an unpaid leave of absence.

61. Faced with no other alternative, JOHN DOE accepted the 2.5 day per week schedule in order to mitigate his damages and provide some form of income for his family; however, Defendants failed to return JOHN DOE to work for 2.5 days per week.

62. In light of Defendants' ongoing refusal to provide reasonable accommodations, JOHN DOE's ability to resume his position, despite a clear path to addressing his needs through reasonable means, has been thwarted.

WHEREFORE, Plaintiff states the following Counts against Defendants:

## COUNT I

*Violation of the Michigan Persons with Disabilities Civil Rights Act*

---

[2] The alleged evaluation document's use would violate the Bullard-Plawecki Employee Right to Know Act.

MCL 37.1102 *et seq*.

*as to all Defendants*

63. Plaintiff incorporates the previous paragraphs as if contained herein.

64. The PWDCRA requires an employer provide a reasonable accommodation to qualified individuals with disabilities, unless doing so would cause "undue hardship." MCL 37.1102.

65. The PWDRCA prohibits an employer or any other person from discriminating against another individual because that individual opposed a practice made unlawful under the PWDCRA. MCL 37.1602.

66. The PWDCRA prohibits an employer and any other person from intimidating, threatening, or interfering with an individual's exercise of his or her rights under the Act. MCL 37.1602.

67. The PWDCRA further prohibits retaliation against an individual who exercises his or her rights under the Act.

68. Defendants discriminated against JOHN DOE because he needed a reasonable accommodation.

69. Defendants violated the PWDCRA when they refused to provide JOHN DOE, an employee with a qualifying disability, a reasonable accommodation.

70. Providing JOHN DOE with his requested accommodation would not cause Defendants "undue hardship," as JOHN DOE received the exact same accommodation the year prior, without issue or hardship on the District.

71. Defendants retaliated against Plaintiff in violation of the PWDCRA because of his advocacy on his behalf and on behalf of students with disabilities.

72. JOHN DOE suffered economic and noneconomic damages caused by the School District's illegal discrimination and retaliation, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT II

*Violation of the Michigan Whistleblowers' Protection Act*
MCL 15.363 *et seq.*

*as to all Defendants*

73. Plaintiff incorporates the previous paragraphs as contained herein.

74. Defendants are subject to the Whistleblowers' Protection Act, MCL 15.361 *et seq*.

75. Plaintiff engaged in protected activity as defined by the Whistleblower Protection Act when he reported violations of law to Defendant Edmondson.

76. Defendants were aware of Plaintiff's protected activity.

77. Despite Plaintiff's protected status, and in retaliation for Plaintiff's protected activity, Defendant took adverse employment action against Plaintiff.

78. The adverse employment action taken by Defendant against Plaintiff included denying JOHN DOE's request for a reasonable accommodation, which had been granted in the past without negatively impacting his performance or the District, and forcing Plaintiff to accept a reduced schedule and reduced pay that adversely affected JOHN DOE's wages, terms, privileges, and conditions of employment.

79. The timing of Defendant's adverse action, closely following Plaintiff's whistleblower report, establishes a direct causal link between Plaintiff's protected activity and the adverse action.

80. The sole difference between the reasonable accommodation granted in the past and the second request was Plaintiff's engagement in protected activity, as no other change in circumstances, performance, or the nature of JOHN DOE's accommodation request existed.

81. Defendants' adverse employment action against JOHN DOE was a direct result of his engagement in a protected activity.

82. As a result of Defendants' actions, Plaintiff suffered economic and noneconomic damages, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT III

*Violation of Section 504 of the Rehabilitation Act of 1973*
34 CFR Part 104 *et seq.*

*as to Defendant RCS*

83. JOHN DOE is a "qualified individual with a disability" within the meaning of Section 504 of the Rehabilitation Act of 1973 (hereinafter, "Section 504").

84. The District is a "program or activity receiving Federal financial assistance" within the meaning of Section 504.

85. Defendant Edmondson is an employee of the District subject to Section 504 and responsible for ensuring compliance with the District's obligations under the Act.

86. Section 504 prohibits a District subject to the Act from discriminating against individuals, including employees, because of their disability.

87. Section 504 requires a District subject to the Act to provide reasonable accommodations to employees with a disability. 32 CFR 104.12.

88. Defendants discriminated against JOHN DOE on the basis of his disability.

89. Defendants further discriminated against JOHN DOE for his advocacy on behalf of disabled students in his role as an Administrator in the Special Education Department when he brought violations of law and policy to the attention of Defendant Edmondson.

90. Defendants discriminated against JOHN DOE for reporting violations of Section 504.

91. JOHN DOE suffered economic and noneconomic damages as a result of Defendants' violations of Section 504, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT IV

*Sex-, Gender- and Race- Based Discrimination in Violation of the Elliott-Larsen Civil Rights Act MCL 37.2101 et seq.*

*as to all Defendants*

92. Plaintiff incorporates the previous paragraphs as if contained herein.

93. The Michigan Elliott-Larsen Civil Rights Act (ELCRA) prohibits retaliatory conduct by and employer when an employee has opposed a violation of the statute. *Minnis v. McDonnell Douglas Tech. Servs. Co.*, 162 F. Supp. 2d 718 (E.D. Mich. 2001).

94. The ELCRA further makes it unlawful for an employer to discharge or otherwise discriminate against an individual because of their race, color, religion, sex, or national origin. MCL 37.2202.

95. Defendants violated the ELCRA when they retaliated against JOHN DOE by openly and repeatedly mocking Plaintiff for his perceived inability to engage in sexual activity due to his disability and retaliated against JOHN DOE on behalf of disabled students and himself.

96. Defendants created a hostile work environment based, in part, upon the activities mentioned in the prior paragraphs.

97. Defendants violated the ELCRA when they discriminated against JOHN DOE based on his perceived masculinity, or lack thereof, his gender, race, and disability.

98. Defendants' targeted harassment of JOHN DOE due to his sex and/or gender was not only humiliating and demeaning, but also created a toxic and abusive work environment.

99. Defendant also violated ELCRA by directing Plaintiff to treat Black administrators and employees differently from others and by fostering a racially discriminatory work environment.

100. Specifically, Defendants' actions included making statements and taking actions that created an atmosphere of racial hostility towards white employees, gender hostility towards those who were not male or not perceived as manly, and hostility against employees and students with disabilities.

101. JOHN DOE suffered economic and noneconomic damages caused by the School District's illegal discrimination and retaliation, including, but not limited to, compensatory damages, emotional distress, mental harm, physical harm, and loss of income.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT V

*Breach of Employment Contract*

*as to all Defendants*

102. Plaintiff incorporates the previous paragraphs as if contained herein.

103. Defendant RCS and Plaintiff had a valid employment contract between them.

104. Defendant RCS breached the employment contract by creating conditions which prevented Plaintiff from fulfilling his duties and receiving his full compensation as listed within the Contract.

105. Plaintiff has suffered damages from RCS's contractual breaches due to RCS' breach of Contract and failure to reinstate JOHN DOE to his full position.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## COUNT VI

*Intentional Infliction of Emotional Distress*

*as to all Defendants*

106. Plaintiff s incorporates the previous paragraphs as if contained herein.

107. Defendants, or those acting on behalf of, or conspiring with, Defendants, and referred to herein, engaged in retaliatory, discriminatory, and intimidating conduct towards JOHN DOE that caused JOHN DOE physical and emotional harm.

108. Defendants retaliated against JOHN DOE for his persistent efforts to follow the law and confront Defendant regarding his unethical behavior and by creating a toxic work environment filled with harassment and discrimination based upon JOHN DOE's insistence on exercising his statutory rights to protect himself, his colleagues, and special needs students.

109. Defendants' conduct was extreme and outrageous.

110. The conduct was the cause of Plaintiff 's complaint; and

111. Defendants' conduct caused Plaintiff profound emotional distress and/or physical injuries.

WHEREFORE, Plaintiff respectfully requests this Honorable Court award him the legal and equitable relief set forth in the Relief Requested section of this Complaint as permitted by applicable law.

## REQUESTED RELIEF

WHEREFORE, Plaintiff JOHN DOE prays that this Honorable Court do the following:

a. Find Defendants violated the PWDCRA.

b. Find Defendants violated Section 504 of the Rehabilitation Act of 1973.

c. Find Defendants violated the Michigan Whistleblowers' Protection Act.

d. Find Defendants violated the ELCRA.

e. Find Defendants breached Plaintiff's Employment Contract.

f. Find Defendants committed Intentional Infliction of Emotional Distress.

g. Award Plaintiff declaratory relief, including a declaration that Defendants' actions violate the above statutes and cause harm to Plaintiff's rights.

h. Order Defendants to cease and desist from further unlawful, discriminatory, retaliatory, and unlawful conduct.

i. Order Defendants to reinstate Plaintiff to his previous position or an equivalent one, with full benefits, seniority, and all terms of employment restored.

j. Award Plaintiff compensatory damages, including but not limited to back pay, front pay, compensation for mental and physical damages, for emotional distress, loss of income, and any other damages caused by Defendants' unlawful conduct.

k. Award Plaintiff punitive damages sufficient to deter Defendants from future violations of the law.

l. Award Plaintiff exemplary damages.

m. Award Plaintiff reasonable attorneys' fees, expert fees, and costs.

n. Award Plaintiff pre- and post-judgment interest.

o. Provide any other relief to Plaintiff that this Honorable Court deems fit.

Dated: May 4, 2025                    DELAPORTE LYNCH, PLLC

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@DelaporteLynch.com
Gina@DelaporteLynch.com

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

JOHN DOE,

    Plaintiff,

Case No. 2:25-cv-11295
Hon.

v.

ROMULUS COMMUNITY SCHOOLS;
BEN EDMONDSON, in his individual and official capacity,

    Defendants.

---

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCH, PLLC
Attorneys for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com
gina@delaportelynch.com

---

## JURY DEMAND

In accordance with Federal Rule of Civil Procedure 38, Plaintiff formally demands a trial by jury.

Dated: May 4, 2025

DELAPORTE LYNCH, PLLC

*/s/ Eric D. Delaporte*
Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@DelaporteLynch.com
Gina@DelaporteLynch.com