UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE,

               Plaintiff,                  Case No. 2:25-cv-11295

v.                                     Honorable Susan K. DeClercq
                                      United States District Judge

ROMULUS COMMUNITY SCHOOLS
DISTRICT, and BENJAMIN
EDMONDSON,

               Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL (ECF No. 13), DENYING WITHOUT PREJUDICE TWO PENDING MOTIONS (ECF Nos. 9; 10), STAYING CASE, AND SCHEDULING STATUS CONFERENCE**

From February 2022 to January 2023, Michigan law firm Delaporte Lynch PLLC ("Delaporte Lynch") performed a variety of legal services for Defendant Romulus Community School District (RCSD). *See* ECF No. 13 at PageID.190. Those legal services included involvement in an internal investigation of Defendant Benjamin Edmondson, the former superintendent of RCSD who has since been reinstated. *See id.* at PageID.190–91.

Now, Delaporte Lynch represents Plaintiff John Doe, who is suing RCSD and Edmondson. ECF No. 1. RCSD seeks an order disqualifying Delaporte Lynch from representing Doe, arguing that a conflict of interest exists due to Delaporte Lynch's

prior representation of RCSD. ECF No. 13. Delaporte Lynch opposes this motion, arguing that there is no conflict of interest because the firm performed work for RCSD before the events giving rise to Doe's complaint occurred. ECF No. 15. But, as explained below, Delaporte Lynch's prior representation of RCSD is substantially related to Doe's lawsuit such that there is a conflict of interest and disqualification is warranted. Thus, Delaporte Lynch will be disqualified from representing Doe and the case will be stayed for a short period to allow Doe time to either hire a new attorney or proceed *pro se*.

## I. PROCEDURAL BACKGROUND

On May 4, 2025, Plaintiff—identified only as John Doe—sued RCSD and its superintendent Benjamin Edmondson. ECF No. 1. Doe is represented by Attorneys Gina Goldfaden and Eric D. Delaporte, both of Delaporte Lynch PLLC ("Delaporte Lynch"). *See id.*

Doe, a special education administrator at RCSD with over 20 years of experience, *id.* at PageID.2, brings six counts against Defendants:

| Count | Claim | Against |
|-------|-------|---------|
| I | Violation of Michigan's Persons with Disabilities Civil Rights Act | All Defendants |
| II | Violation of Michigan's Whistleblower Protection Act | All Defendants |
| III | Violation of Section 504 of the Rehabilitation Act of 1973 | RCSD only |
| IV | Sex, gender, and race discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act | All Defendants |
| V | Breach of Employment Contract | All Defendants |
| VI | Intentional Infliction of Emotional Distress | All Defendants |

*Id.* at PageID.9–16.

Just over two months after Doe filed his complaint, Defendants filed a motion to disqualify Delaporte Lynch from representing Doe, arguing that "a severe and direct conflict of interest" exists because Delaporte Lynch previously provided legal services to RCSD. ECF No. 13 at PageID.188. A motion hearing was held on October 27, 2025. *See* ECF No. 18.

Although two other motions are also pending, ECF Nos. 9; 10, this Court must first address Defendants' motion to disqualify Doe's counsel "because the success of a disqualification motion has the potential to change the proceedings entirely." *Bowers v. Ophthalmology Grp*, 733 F.3d 647, 654 (6th Cir. 2013). Indeed, if Delaporte Lynch is disqualified, this Court should not proceed to "reach the other questions or motions presented to it through the disqualified counsel." *Id.*; *see also Escordi v. Macomb Twp.*, No. 21-10570, 2022 WL 1599436, at *2 (E.D. Mich. May 20, 2022) (resolving the defendant's disqualification motion before addressing other pending motions).

## II. LEGAL STANDARD

"A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention." *DeBiasi v. Charter Cty. of Wayne*, 284 F. Supp. 2d 760, 771 (E.D. Mich. 2003). And district courts "may disqualify an attorney for possessing a conflict of interest." *Axle of Dearborn, Inc.*

- 3 -

*v. Detroit IT*, No. 21-cv-10163, 2023 WL 5955180, at *2 (E.D. Mich. Sept. 13, 2023) (citing *Nat'l Union Fire Ins. Co. of Pittsburg, Penn. v. Alticor, Inc.*, 472 F.3d 436, 437 (6th Cir. 2007)).

Disqualification of counsel for a conflict of interest[1] "is appropriate if '(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification.'" *Bowers*, 733 F.3d at 651 (quoting *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990)). Similarly, the Michigan Rules of Professional Conduct provide that:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Mich. R. Pro. Conduct 1.9(a).

---

[1] At the October 27, 2025 motion hearing, Attorney Delaporte cited *Allstate Insurance Company v. Inscribed PLLC* several times for the proposition that a court must find "'a reasonable possibility that some specifically identifiable impropriety actually occurred'" before disqualifying an attorney. 571 F. Supp. 3d 823, 834 (E.D. Mich. 2021) (quoting *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865–66 (S.D. Ohio 2002)). But that standard articulated in *Allstate* is not on all fours with this case. Indeed, *Allstate* did not contemplate disqualification for a conflict of interest, but instead contemplated disqualification of an attorney for improper *ex parte* communications with a party *and* material misrepresentations about it to the Court. *See id.* (citing Mich. R. Pro. Conduct 4.2(a) and 5.1(c)). Neither of those two situations are present in this case.

The party seeking disqualification "bears the burden of proving that opposing counsel should be disqualified." *Escordi*, 2022 WL 1599436, at *3 (citing *MJK Fam. LLC v. Corp. Eagle Mgmt. Servs.*, 676 F.Supp.2d 584, 592 (E.D. Mich. 2009)). This burden is a heavy one and requires the movant to meet "a high standard of proof." *Bowers*, 733 F.3d at 655 (Griffin, J., dissenting) (citing *Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.*, 237 B.R. 322, 337 (6th Cir. BAP 1999)). Indeed, district courts "must be vigilant in reviewing motions to disqualify counsel [because] the ability to deny one's opponent the services of capable counsel is a potent weapon that can be misused as a technique of harassment." *Moses v. Sterling Com. (Am.), Inc.*, 122 F. App'x 177, 183 (6th Cir. 2005) (cleaned up).

### III. ANALYSIS

Defendants seek to disqualify Delaporte Lynch because the firm previously represented RCSD in 2022 and 2023 on matters that are substantially related to this case. ECF No. 13 at PageID.192. Doe responds that Delaporte Lynch's earlier representation of RCSD does not disqualify the firm or Attorney Delaporte from representing Doe because it was unrelated to any dispute in this case.

Because neither party disputes that an attorney-client relationship existed between Delaporte Lynch and RCSD in 2022 and 2023, the first element of the *Bowers* analysis is satisfied and this Court need only address the second and third elements. *See Educational Broadband Corp. v. Rural Connect, LLC*, No. 1:24-CV-

- 5 -

01206, 2025 WL 2946166, at *3 (W.D. Tenn. June 25, 2025) (noting that "[t]he first element of the *Bowers* analysis is usually simple.").

## A. Substantially Related Subject Matter

The second element of the *Bowers* analysis requires this Court to determine whether the subject matter of Delaporte Lynch's prior representation of the RCSD is substantially related to the subject matter in the current case. *See Bowers*, 733 F.3d at 651 (quoting *Dana Corp.* 900 F.2d at 889).

While construing Kentucky Rule of Professional Conduct 1.9—which is nearly identical to Michigan's Rule of Professional Conduct 1.9—the Sixth Circuit has "suggested that '[m]atters are "substantially related" . . . if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information *as would normally have been obtained* in the prior representation would materially advance the client's position in the subsequent matter.'" *Atmosphere Hosp. Mgmt. Servs., LLC v. Royal Realties, LLC*, 28 F. Supp. 3d 692, 697 (E.D. Mich. 2014) (quoting *Bowers*, 733 F.3d at 652)).

Here, Delaporte Lynch's prior representation of RCSD does not involve the same specific "transaction[s] or legal dispute[s]" that are raised by Doe's lawsuit against RCSD. *Id.* So the question is whether there is "a substantial risk that confidential factual information" that Delaporte Lynch would have normally obtained in its previous representation of RSCD "would materially advance [Doe's]

position in [this] subsequent matter." *Id.* In order to answer this question, this Court must evaluate the nature and scope of Delaporte Lynch's prior representation of RCSD. But the parties characterize the nature and scope of Delaporte Lynch's prior representation of RCSD differently.[2]

According to RCSD, Delaporte Lynch represented RCSD for nearly a year on a wide range of issues. *See* ECF No. 13 at PageID.191, 208. At the motion hearing, RCSD explained that although Delaporte Lynch was *initially* hired to specifically counsel RCSD about several student safety issues[3] in February 2022, he continued to counsel RCSD on many other issues in the months that follow. Indeed, RCSD Board Member Ursula Rogers averred that throughout 2022, Delaporte Lynch attended closed sessions of board meetings and "regularly advised" RCSD personnel and board members regarding litigation strategy, labor negotiation strategy, labor grievance resolution, "employment issues," and employee discipline recommendations. *Id.* at PageID.207. And—as particularly important to this case— RCSD explained at the motion hearing that Delaporte Lynch oversaw an internal

---

[2] Despite the parties' disagreement on this issue, they both agreed at the motion hearing that an evidentiary hearing on the issue was not necessary.

[3] Notably, RCSD Board of Education Member Ursula Rogers averred that the "student safety" concerns Delaporte Lynch was initially hired to investigate "were actually several employment-based investigations" which "included an investigation into the then former, and now current, Superintendent Dr. Benjamin Edmondson," who is a named defendant in this case as well. ECF No. 13 at PageID.207.

investigation into Edmondson, which included interviewing people who worked with Edmondson and a search of his laptop. RCSD did note, however, that the search of Edmondson's laptop was performed by a third-party, e-discovery company, not Delaporte Lynch attorneys themselves.

But Doe says that RCSD's characterization of the work the work Delaporte Lynch performed for RCSD is wrong. At the hearing, Attorney Delaporte admitted that he performed "a fair amount of work" for RCSD. But, according to Attorney Delaporte, none of the work Delaporte Lynch performed for RCSD was in any way relevant to this matter. To start, Attorney Delaporte noted at the hearing that during the entire 11-month timespan it worked for RCSD, Edmondson was not a RCSD employee. Indeed, Edmondson had been fired several months before Delaporte Lynch was hired, and then he was rehired shortly after RCSD and Delaporte Lynch terminated their attorney-client relationship. ECF No. 16 at PageID.305–06. Moreover, Attorney Delaporte asserted at the hearing that although the firm was performing work for RCSD in August 2022 when Doe was hired, the firm did not perform any work "related to [Doe's] hiring, or [Doe's] subsequent contract," and the events giving rise to Doe's complaint here did not begin until December 2023— almost a year after Delaporte Lynch stopped working for RCSD. *Id.* at PageID.306.

As to the alleged investigation into Edmondson, Attorney Delaporte says "the firm's representation did not include the pre-termination investigation of

Edmondson, or any other privileged or confidential matters related thereto." *Id.* at PageID.309. However, at the motion hearing, Attorney Delaporte acknowledged that the firm was involved in an internal investigation into Edmondson that RCSD authorized *after* Edmondson was fired, while Delaporte Lynch was working for RCSD. When this Court asked Attorney Delaporte at the motion hearing if he ever reviewed the substance of e-mails sent or received by RCSD Board of Education members or other RCSD employees during that investigation, Attorney Delaporte said that he did not review Board Member e-mails and that he could not remember if he reviewed RCSD employee e-mails.

Despite the parties' different characterizations of the scope of the work Delaporte Lynch performed and the kind of information Delaporte Lynch was privy to in its prior representation of RCSD, this much is clear: Delaporte Lynch performed a range of legal services for RCSD over an 11-month period. And through that work, Delaporte Lynch had access to a wealth of information about RCSD and Edmondson that it would not have otherwise had, but for the attorney-client relationship.

Indeed, Delaporte Lynch's billing records suggest it performed tens of thousands of dollars of work for RCSD on issues ranging from labor disputes to embezzlement allegations to litigation strategies. *See* ECF No. 13 at PageID.212–256. While performing this work, Delaporte Lynch attended closed sessions of

RCSD board meetings and there is evidence that Delaporte Lynch became involved in an investigation of Edmondson—who is a named defendant in this case. Although Delaporte Lynch makes much of the fact that it did not work on any matters related to John Doe specifically, that does not overcome the fact that Delaporte Lynch worked closely with the RCSD Board of Education to perform an internal investigation of Edmondson. True, Edmondson was not employed by RCSD at the time Delaporte Lynch performed this work for RCSD, but there is a reasonable probability that RCSD provided Delaporte Lynch with access to confidential information about its former (and now current) employee *because of* the attorney-client relationship RCSD had with Delaporte Lynch. *See Atmosphere*, 28 F. Supp. 3d at 697.

Thus, there is a substantial risk that Delaporte Lynch obtained confidential factual information about Edmondson and the RCSD Board's assessment of Edmondson through closed sessions and confidential attorney-client communication. And this confidential factual information would materially advance Doe's position in this matter where Edmondson is a named Defendant. In this way, Doe's lawsuit is substantially related to Delaporte Lynch's prior representation of RCSD such that a conflict of interest appears to exist that supports disqualification.

## B. Confidential Information

Finally, turning to the third element of the *Bowers* analysis, this Court must determine whether Delaporte Lynch acquired confidential information from RCSD. *See Bowers*, 733 F.3d at 651 (quoting *Dana Corp.* 900 F.2d at 889). In the context of this inquiry, "confidential information" is "generally regarded as information that is gained during or related to the representation of a client in a matter." *Broadband Corp.* 2025 WL 2946166, at *4 (citing *Bowers*, 733 F.3d at 650–51). Resolution of the third *Bowers* element can be tricky because the movant "need not specify the confidential information that was revealed" in the matter in which the opposing counsel previously represented them. *Id.* (citing *Atmosphere*, 28 F. Supp. 3d at 698). Instead, district courts "must review the confidential information inquiry from cruising altitude, 'using generalities,' rather than 'examining what actually happened.'"[4] *Id.* (quoting *Bowers*, 733 F.3d at 652).

In this case, the confidential information inquiry has significant overlap with this Court's analysis of the second *Bowers* element above. As explained, although the parties dispute the specific pieces of confidential information that Delaporte

---

[4] As United States Magistrate Judge Jon A. York has noted, "[t]his inquiry has its flaws, but the alternative—engaging in a detailed factual inquiry into the sensitive confidences that have been revealed through the attorney-client relationship—is not satisfactory." *Educational Broadband Corp. v. Rural Connect, LLC*, No. 1:24-cv-01206, 2025 WL 2946166, at *4 (W.D. Tenn. June 25, 2025) (citing *Analytica, Inc. v. NPD Rsch., Inc.*, 708 F.2d 1263, 1269 (7th Cir. 1983)).

Lynch did or did not receive from RCSD, it is clear that Delaporte Lynch gained some confidential information about or relating to Edmondson and his performance as superintendent of RCSD during the firm's representation of RCSD through Delaporte Lynch's presence at closed board sessions, participation in internal investigations involving Edmondson, and preparation of recommendations. Accordingly, this factor also suggests a conflict of interest is present such that Delaporte Lynch's disqualification is warranted. *See id.* Accordingly, Delaporte Lynch will be disqualified from representing John Doe in this matter.

### D. Effect of Disqualification

Having determined that Delaporte Lynch will be disqualified from representing John Doe in this case, this Court is confident that Delaporte Lynch is aware of its ethical obligations under Michigan Rule of Professional Conduct 1.6. Nevertheless, it will remind Delaporte Lynch of those obligations and enjoin the firm from providing any information to any attorney Doe might hire to represent him.

As for Doe himself, he will be provided six weeks to either obtain a new attorney or file a notice of intent to represent himself. During this six-week period, this case will be stayed. Once that six-week period expires, this Court will hold a virtual status conference to set new case management deadlines considering the change in representation.

Finally, Defendants' motion to compel arbitration, ECF No. 9, and Plaintiff's motion for a protective order, ECF No. 10, will be denied without prejudice at this time, as the disqualification of Delaporte Lynch means this Court should not proceed to "reach the other questions or motions presented to it through the disqualified counsel." *Bowers*, 733 F.3d at 654. After the question of Doe's representation is resolved and the stay is lifted, all parties may file new motions seeking any relevant relief.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Disqualify Plaintiff's Counsel, ECF No. 13, is **GRANTED**. To that end, it is **ORDERED** that:

1. Delaporte Lynch, PLLC is **DISQUALIFIED** from representing Plaintiff John Doe in this matter;

2. Delaporte Lynch, PLLC, is **ENJOINED** from providing any information to Doe or any attorney Doe might hire to represent him; and

3. Plaintiff is **DIRECTED** to either (1) obtain new counsel or (2) file a notice of intent to represent himself **on or before February 25, 2026**.

Further, it is **ORDERED** that that Defendants' Motion to Compel Arbitration, ECF No. 9, and Plaintiff's Motion for a Protective Order, ECF No. 10, are **DENIED WITHOUT PREJUDICE**.

Further, it is **ORDERED** that this case will be stayed **until February 25, 2026**, to allow Plaintiff ample time to obtain new counsel.

- 13 -

Finally, it is **ORDERED** that a virtual status conference is **SCHEDULED** for

**Thursday, February 26, 2026, at 4:00 PM EST**.

**IT IS SO ORDERED.**

**This is not a final order and does not close the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: January 15, 2026